TRANSAMERICA INSURANCE COMPANY

v.

BELLEFONTE INSURANCE COMPANY

and

Roussel Corporation.

Civ. A. No. 78–431.

United States District Court, E.D. Pennsylvania.

Sept. 29, 1982.

James J. McCabe, Jr., Duane, Morris & Heckscher, Philadelphia, Pa., for Transamerica Ins. Co.

Francis E. Marshall, Marshall, Dennehy & Warner, Philadelphia, Pa., for Bellefonte Ins. Co.

Marvin V. Ausubel, Trubin, Sillocks, Edelman & Knapp, New York City, for Roussel Corp.

## MEMORANDUM AND ORDER

HANNUM, District Judge.

This is an action by Transamerica Insurance Company seeking declaratory relief pursuant to 28 U.S.C. § 2201. As related in this Court's Memorandum and Order of May 21, 1980, "The essence of the action requires a determination concerning which of two insurance companies, Transamerica and/or the defendant Bellefonte Insurance Company ... provided insurance coverage to the defendant Roussel Corporation with respect to 'suits brought by or on behalf of persons after the expiration of Transamerica's policy period.' "[1] The factual background of this case is adequately set forth in the Memorandum and Order of May 21, 1980. See 490 F.Supp. at 935–36. Subsequent to that ruling, which denied summary judgment motions by all parties, counsel stipulated that:

1. That there exists before your Honorable Court for determination the issue of whether the Bellefonte Insurance Company is liable in the sum of $200,000.00 in each of the three cases (Kushnir, Demko and Provenzano) wherein children were born before the endorsement dated April 23, 1976, which was sent by Herman Rich, Vice President of American Coverage Company, Roussel Corporation's broker to John Bauer, Roussel Corporation's insurance manager, who signed or initialed acceptance and acknowledgement of said endorsement.

2. In the alternative, in view of said endorsement is Bellefonte Insurance Company liable in the aggregate sum of $200,000.00 and if so, as of what date, i.e. the inception of the policy 8/19/75, the date of the endorsement April 23, 1976 or the date on which the endorsement was signed and returned to Mr. Rich by Mr. Bauer [?]

Although not denominated as such, the Court will treat the submission of issues as though cross motions for summary judgment or partial summary judgment were filed.[2]

The issue presently before the Court centers around an endorsement to a bodily injury and property damage liability policy issued by Bellefonte to Roussel. Bellefonte had issued the policy to Roussel for a period of time covering August 19, 1975 to August 19, 1976 and the limit of liability contained in this policy was $200,000.00 per occurrence. Roussel paid a $10,000.00 premium for the policy. Ten months later, Bellefonte issued an endorsement to Roussel which sought to change the limit of liability from $200,000.00 per occurrence to $200,000.00 annual aggregate. The endorsement [hereinafter "Endorsement No. 2"] was forwarded to John D. Bauer, Insurance Manager for Roussel and conveyed via Roussel's insurance broker, American Coverage Corporation. Three dates are specified on the cover sheet of Endorsement No. 2: In the

1. This Court's opinion of May 21, 1980 is reported in 490 F.Supp. 935 (E.D.Pa.1980).

2. To prevail on a motion for summary judgment, the movant must conclusively demonstrate that there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law. *Allen v. Dorsey,* 463 F.Supp. 44, 46–47 (E.D.Pa.1978); *Hancock Paper Co. v. Champion International Corp.,* 424 F.Supp. 285, 286 (E.D.Pa.1976) *aff'd* 565 F.2d 151 (3d Cir.1977).

upper left hand corner, there is a designation "Effective: August 19, 1975." At the bottom of the sheet the phrase occurs: "Dated April 23, 1976 sm" and the upper right hand corner of the page is marked "Received June 25, 1976." [3]

Bellefonte contends that the liability—limiting Endorsement No. 2 forwarded to Roussel in June, 1976 was retroactive to the inception date of the policy, that is, August 19, 1975. Plaintiff Transamerica and defendant Roussel Corporation both take the position that the endorsement took effect June 25, 1976 and operated prospectively only. The Court agrees with Transamerica and Roussel and holds that the Endorsement No. 2 was effective, if at all, prospectively from June 25, 1976, the date on which Roussel's Insurance manager signed or initialed acceptance of the endorsement.[4]

In reaching this result, the Court is persuaded by the arguments of Transamerica and Roussel to the effect that the Endorsement No. 2 is ambiguous as to the effective date.

It is an established principle of insurance law that an ambiguity in a policy must be construed against the insurer, particularly when the ambiguity is found in a clause excluding or limiting coverage in some way. *Breed v. Insurance Company of North America,* 46 N.Y.2d 351, 413 N.Y.S.2d 352, 385 N.E.2d 1280 (1978).[5] *See also Hionis v. Northern Mutual Insurance Co.,* 230 Pa.Super. 511, 327 A.2d 363 (1974); Couch on Insurance 2d § 15.73 (1959 & 1981 Supp.). In this regard, the Court is persuaded that under the circumstances of its issuance, Endorsement No. 2 is indeed capable of more than one reasonable interpretation. Bellefonte contends that the limiting endorsement was retroactive to the policy inception date relying wholly on the following language in the caption of the endorsement:

"Assured: Roussel Corporation"

"Effective: August 19, 1975"

On the other hand, the actual endorsement received by Roussel contains two other dates, as related above. Clearly, it is a reasonable interpretation that such a drastic modification of policy terms as contemplated by the endorsement would operate only prospectively as of the date it was initialed and returned by the Roussel Insurance Manager.

The ambiguity of the limiting endorsement is further illustrated by the much clearer language in other portions of the policy, such as the language used by Bellefonte in describing the effective date of the deductible liability insurance endorsement. This portion of the policy provides in pertinent part:

"This endorsement, effective 8/19/75, forms a part of policy No. CAG203156 issued to Roussel Corporation." [6]

The case of *Whiteside v. Insurance Co. of Pennsylvania,* 274 App.Div. 36, 79 N.Y.S.2d 715 (1st Dept.1948) is instructive wherein the Court held that:

the interpretation of a clause in a policy of insurance is to be determined by what it means to the ordinary businessman, not what it might convey on careful analysis to a trained lawyer. *If the insurance company desired to limit its liability as drastically as it claims it purported to do, it should have expressed that limitation in language that would reasonably have conveyed its meaning to an intelligent layman;* it should have been so worded as to be understood not by an insurance expert, but by a person of ordinary business intelligence.

79 N.Y.S.2d at 717 (emphasis supplied). Significantly, no mention whatsoever of the

---

3. *See* Exhibit B to Memorandum Of Law On Behalf Of Bellefonte Insurance Company, Docket Entry No. 37.

4. *See* Exhibit B, note 3 *supra.*

5. All parties are in agreement that the law of the State of New York governs the transaction in question. *See* Transcript of Oral Argument of May 21, 1981 at 5–6. *See also* this Court's Memorandum and Order in the above-captioned case, 490 F.Supp. at 936.

6. *See* Exhibit C to Memorandum Of Law On Behalf Of Transamerica Insurance Company, Docket Entry No. 42.

retroactive effect of the endorsement is made either in the endorsement itself or the accompanying cover letter sent to Roussel by its broker.[7] In effecting this policy change, therefore, Bellefonte could have made clear the retroactivity of its limitation "by the addition of one phrase." *Tyroler v. Continental Casualty Co.,* 31 App.Div.2d 8, 294 N.Y.S.2d 373, 376 (1st Dept.1968). In this regard, it is incumbent upon insurers to prove that an insured has clear notice of limiting provisions in the policy. *Kronfeld v. Fidelity & Casualty Co. of New York,* 81 Misc.2d 557, 365 N.Y.S.2d 416 (N.Y.Co.1975), aff'd, 53 A.D.2d 190, 385 N.Y.S.2d 552 (1976). *See also Hionis v. Northern Mutual Insurance Company,* 230 Pa.Super. 511, 327 A.2d 363 (1974) (insurer must prove that the insured had awareness and understanding of exclusions).

Also significant is the fact that Roussel had paid a $10,000.00 premium for "per occurrence" coverage at the outset of the policy period. Although the endorsement purported to substantially reduce the effective coverage, no adjustment of the premium was made to Roussel in light of the significant reduction of coverage. This circumstance, in the Court's view, further weighs against the reasonableness of interpreting the endorsement as effecting a retroactive coverage reduction. *See Pan American World Air, Inc. v. Aetna Casualty & Surety Co.,* 505 F.2d 989, 1001 & n. 10 (2nd Cir.1974) (size of premiums is relevant to construction of policy).

In summary, it is clear that the burden is on Bellefonte to establish not only that the words and expressions in the endorsement are susceptible of the construction sought by this insurer, but that it is the only construction which can be fairly placed on them. *Filor, Bullard & Smyth v. Insurance Company of North America,* 605 F.2d 598, 602 (2nd Cir.1978). Viewing the essentially undisputed facts of the case in a light favorable to Bellefonte, the Court is not persuaded that Bellefonte's interpretation is the only reasonable one and thus Endorsement No. 2 took effect, if at all, on June 25, 1976 to operate prospectively.

In support of its position, however, Bellefonte has placed considerable emphasis on the alleged non-existence of economic duress or business compulsion in the alleged acceptance by Roussel of the endorsement. Transamerica and Roussel, on the other hand, urge that the vast inequality of bargaining power between Bellefonte and Roussel abrogated any acceptance by Roussel of Endorsement No. 2. Whether, or to what extent actual economic duress was present in Roussel's "acceptance" of the endorsement can not be determined on the present state of the record. *See National Auto Brokers Corporation v. Aleeda Development Corporation,* 243 Pa. 101, 364 A.2d 470 (1976). Accordingly, the Court does not opine at this juncture that Roussel was not bound by the endorsement prospectively, as of June 25, 1976. In any event, the endorsement in question was ambiguous with respect to its purported retroactivity feature and the endorsement,[8] therefore, took effect no earlier than June 25, 1976.[9]

An Order follows.

## ORDER

AND NOW, this 29th day of September, 1982, it is ADJUDGED that Endorsement

---

7. *See* Exhibit C to Memorandum Of Law On Behalf Of Bellefonte Insurance Company, Defendant, Docket Entry No. 37. The cover letter offers no more guidance than is found in the following sentence: "What this endorsement accomplishes in effect is to amend the limit of $200,000. for each occurrence to apply to an annual aggregate limit of $200,000." *Id.*

8. Bellefonte has cited various cases for the proposition that provisions of insurance policies intended to have retroactive effect are valid and enforceable. E.g. *United States of America v. Patryas,* 303 U.S. 341, 345, 58 S.Ct. 551, 553, 82 L.Ed. 883 (1938). However, such cases are distinguishable in that none of them gave effect to a retroactive reduction of coverage imposed by an insurer.

9. An additional issue mentioned at the oral argument of May 21, 1981 concerns the time that the underlying causes of action accrued the coverage of which gives rise to this lawsuit. This issue, however, has been adequately covered in the Court's May 21, 1980 Memorandum and Order, 490 F.Supp. at 936–39.

No. 2 took effect no earlier than June 25, 1976 and the defendant Bellefonte Insurance Company is liable to provide coverage in the amount of $200,000.00 per occurrence with respect to occurrences prior to June 25, 1976.